**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**THE HUNTINGTON NATIONAL BANK**, a national banking association,

Plaintiff,

vs.

**LET'S SHAKE, L.L.C.**, a Texas limited liability company,

Defendant.

Case No: 26-
Hon.

---

Peter D. Cronk (P60172)
Matthew J. Boettcher (P40929)
Attorneys for Huntington Bank
PLUNKETT COONEY
101 N. Washington Sq., Ste. 1200
Lansing, MI 48933
pcronk@plunkettcooney.com
mboettcher@plunkettcooney.com

---

**PLAINTIFF THE HUNTINGTON NATIONAL BANK'S COMPLAINT FOR BREACH OF PROMISSORY NOTE, CLAIM AND DELIVERY AND APPOINTMENT OF RECEIVER**

**The Huntington National Bank**, by and through its attorneys, PLUNKETT COONEY, and for its Complaint for Breach of Note, Claim and Delivery, and Appointment of Receiver states:

## COMMON ALLEGATIONS

### The Parties

1. Plaintiff **The Huntington National Bank** ("Huntington" or "Plaintiff") is a national banking association, a citizen of Ohio, and maintains its principal offices at 41 S. High Street, Columbus, Ohio 43215.

2. Defendant **Let's Shake, L.L.C.** ("Let's Shake" or "Defendant") is a Texas limited liability company, a citizen of Texas, and maintains its principal offices at 13355 Noel Road, Suite 1645, Dallas, Texas 75240.

## JURISDICTION AND VENUE

3. Jurisdiction over this matter properly rests within this Honorable Court pursuant to 28 U.S.C. §1332(a)(1). The amount in controversy is in excess of $75,000.00, exclusive of interest and costs, and complete diversity exists between the parties.

4. Huntington and Defendant agreed in Section 7.8 of the Loan Agreement (as defined below) that any legal or equitable action or proceeding with respect to any loan document may be brought in any court of the State of Michigan, or in the United States District Court for the Eastern District of Michigan, and Defendant submitted to and accepted generally and unconditionally the jurisdiction of this Court.

5. Defendant further agreed in Section 5.3 of the Security Agreement (as defined below) that any legal or equitable action or proceeding with respect to the Security Agreement or the transactions contemplated thereby may be brought in any court of the State of Michigan, or in the United States District Court for the Eastern District of Michigan, and Defendant submitted to and accepted generally and unconditionally the jurisdiction of this Court.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2). A substantial part of the events or omissions giving rise to the claims in this case occurred in Michigan, and the parties have contractually agreed to the jurisdiction of this Court.

**THE LOAN DOCUMENTS AND BACKGROUND**

7. Defendant and Huntington entered into a Loan Agreement dated December 4, 2020, under which Huntington made available to Defendant a term loan in the original principal amount of $7,200,000.00, as amended by a First Amendment to Loan Agreement and Waiver dated October 27, 2022 (as amended, the "Loan Agreement"). The Loan Agreement is attached as **Exhibit A.**

8. To evidence Defendant's obligations under the Loan Agreement, Defendant executed a Term Loan A Note dated December 4, 2020, payable to the order of Huntington (the "Note"). The Note is attached as **Exhibit B.**

9. The Note provides that Defendant promises to pay to the order of Huntington on or before the Maturity Date the principal sum of $7,200,000.00, together with interest on the unpaid principal amount thereof at the rates and on the dates set forth in the Note.

10. The Note is governed by the law of the State of Michigan.

11. Repayment of the Indebtedness (defined below) owing under the Note is secured by a Security Agreement dated December 4, 2020, executed by Let's Shake and granting Huntington a first-priority security interest and lien against all of Defendant's personal property, including but not limited to, all of its accounts, inventory, equipment, fixtures, general intangibles, payment intangibles, intellectual property, investment property, subsidiary interests, deposit accounts, chattel paper, instruments, documents, commercial tort claims, letter-of-credit rights, supporting obligations, and software (the "Security Agreement"). All personal property identified in the Security Agreement is referred to as the "Personal Property Collateral." The Security Agreement is attached as **Exhibit C**.

12. Huntington filed a UCC1 Financing Statement against Let's Shake with the Texas Secretary of State perfecting its lien and security interest in the Personal Property Collateral owned by Defendant. The UCC1 and the continuation statement is attached as collective **Exhibit D**.

13. Upon information and belief, the Personal Property Collateral is currently being stored and utilized by Defendant at the following locations in the State of Texas: (i) 13355 Noel Road, Suite 1645, Dallas, Texas 75240 (Defendant's chief executive office); and (ii) multiple Sonic Drive-In Restaurant locations owned and operated by Defendant and listed in **Exhibit E**.

14. The Loan Agreement, Note, Security Agreement, and all other loan documents executed in connection with the loans made available to Defendant are collectively referred to as the "Loan Documents."

**THE DEFAULTS**

15. Defendant has failed to comply with the terms of the Loan Documents and is in default thereunder by virtue of, among other things, failure to pay the Note in full when it matured on September 30, 2025 (the "Specified Default").

16. Due to the Specified Default, on November 11, 2025, Huntington sent Defendant a default and reservation of rights letter notifying Defendant of the Specified Default and reserving Huntington's rights and remedies. The November 11, 2025 default letter is attached as **Exhibit F**.

17. When the Specified Default was not addressed, on December 17, 2025, Huntington sent Defendant a notice of default letter demanding payment

of the Note in full. The December 17, 2025 default and demand letter is attached as **Exhibit G**.

18. On April 7, 2026, a final Notice of Default and Demand for Payment in Full was sent to Defendant, notifying Defendant that it remained in default and that Huntington was demanding payment in full. The April 7, 2026 notice of default is attached as **Exhibit H**.

19. Defendant has failed to pay the Indebtedness as demanded.

20. The unpaid balance of Defendant's obligations to Huntington under the Note as of August 26, 2026, is **$3,913,893.98**, calculated as follows (the "Indebtedness"):

| | |
|---|---|
| Principal | $ 3,780,000.00 |
| Unpaid Interest | $ 111,275.71 ($946.52 per diem) |
| Attorney fees | $ 22,618.27 |
| **TOTAL:** | **$3,913,893.98** |

plus interest at $946.52 per day, default interest, expenses, and costs, including attorneys' fees and costs accruing after August 26, 2026.

21. By reason of the foregoing Specified Default, Huntington has employed the services of undersigned counsel to attempt to effect collection of the Indebtedness due Huntington under the Loan Documents, to protect its security under the Loan Documents, and to institute and prosecute this action, and for such employment, Huntington has agreed and become obligated to pay

its counsel's attorneys' fees and expenses. Pursuant to the terms of the Loan Documents, Defendant is obligated to reimburse Huntington for such attorneys' fees and expenses, together with interest thereon, which obligations are secured by the Loan Documents.

22. As a result of the foregoing Specified Default, Huntington may expend during the pendency of this action certain necessary costs, charges, and expenses of suit, including, without limitation, UCC searches, appraisals, third-party reports and audits, auction fees and expenses, and receivership fees and expenses. Pursuant to the terms of the Loan Documents, Defendant is obligated to reimburse Huntington for all such costs, charges and expenses, which obligations are secured by the Loan Documents.

23. All conditions precedent to the maintenance of this action have occurred or have been waived.

**COUNT I – BREACH OF PROMISSORY NOTE**

24. Huntington incorporates the allegations set forth in Paragraphs 1 through 23 above by reference, with the same force and effect as if fully repeated.

25. As set forth above, Defendant executed the Note, promising to pay to the order of Huntington the principal sum of $7,200,000.00, together with

interest on the unpaid principal amount thereof at the rates and on the dates set forth in the Note.

26. Defendant is in default under the Note, and due to such default, Huntington has demanded payment of the Indebtedness in full.

27. Huntington is entitled to recover all principal and interest outstanding under the Note, together with all of Huntington's costs and attorneys' fees incurred while collecting same.

28. Other than a single payment that was made on May 7, 2026, Defendant has failed, neglected, and refused to repay the Indebtedness under the Note, despite demand having been made by Huntington.

29. As of August 26, 2026, Defendant's Indebtedness under the Note totals **$3,913,893.98**, plus interest at $946.52 per diem, default interest, costs, and attorneys' fees.

WHEREFORE, The Huntington National Bank prays that this Honorable Court enter judgment in its favor and against Let's Shake, L.L.C., in the sum of **$3,913,893.98**, together with its costs, reasonable attorneys' fees, and interest.

**COUNT II - CLAIM AND DELIVERY**

30. Huntington incorporates the allegations set forth in Paragraphs 1 through 29 above by reference, with the same force and effect as if fully repeated

31. To secure repayment of Defendant's Indebtedness owing to Huntington, Defendant executed the Security Agreement attached as **Exhibit C**.

32. Huntington filed a UCC1 Financing Statement against Let's Shake with the Texas Secretary of State on December 2, 2020 (Filing No. 20-0059864115) perfecting its lien and security interest in the Personal Property Collateral owned by Defendant. **Exhibit D**.

33. Huntington's liens and security interests encumber all of Defendant's personal property assets, including the Personal Property Collateral.

34. Huntington's liens and security interests in the Personal Property Collateral are superior to any other lien or security interest in the Personal Property Collateral.

35. Upon information and belief, the Personal Property Collateral is currently being stored and utilized by Defendant at various locations in the State of Texas, including:

(i) 13355 Noel Road, Suite 1645, Dallas, Texas 75240 (Defendant's chief executive office), and

(ii) various Sonic Drive-In Restaurant locations in Texas operated by Defendant set forth in **Exhibit E**.

36. Pursuant to the terms of the Security Agreement, Huntington is entitled to possession of the Personal Property Collateral following default.

Upon the occurrence and during the continuance of any Event of Default, Huntington has and may exercise any one or more of the rights and remedies provided to it under the Security Agreement or any of the other Loan Documents or provided by law, including but not limited to all of the rights and remedies of a secured party under Michigan's Uniform Commercial Code. *See* Section 4.1 of the Security Agreement attached as **Exhibit C**.

37. Pursuant to the terms of the Security Agreement, Huntington is entitled to collect the Personal Property Collateral and sell it. *See* Section 4.1 of the Security Agreement attached as **Exhibit C**.

38. The Personal Property Collateral consists of independent pieces of property. For the purpose of determining the amount of any bond required by this Honorable Court pursuant to MCR 3.105(C)(2) only, Huntington estimates the fair market value of the Personal Property Collateral is $4,000,000.00.

39. Pursuant to the terms of the Security Agreement, Huntington is entitled to recover from Defendant all costs, expenses and reasonable attorneys' fees incurred in locating and obtaining possession of the Personal Property Collateral.

WHEREFORE, The Huntington National Bank prays that this Honorable Court:

A. Issue an Order requiring Defendant, its representatives, agents and assigns, to show cause why this Honorable Court should not order the Personal Property Collateral to be delivered to it forthwith, in accordance with MCR 3.105(E)(4);

B. Order and adjudge that Defendant, its representatives, agents and assigns, immediately deliver an inventory of the Personal Property Collateral to Huntington, describing same by item, type and location, or permitting Huntington and/or its authorized independent contractors to perform same forthwith;

C. Order and adjudge that Defendant, its representatives, agents and assigns, deliver the Personal Property Collateral to Huntington, or that Huntington be permitted to seize same, pursuant to MCR 3.105(E)(4)(c);

D. Order and adjudge Huntington be authorized to dispose of the Personal Property Collateral pursuant to the Loan Documents, the Security Agreement, and MCLA §440.9610, free and clear of all liens;

E. Enter judgment in favor of Huntington and against Defendant for any deficiency that may exist after the disposition of the Personal Property Collateral pursuant to Paragraph D above, together with costs, reasonable attorneys' fees; and,

F. Grant Huntington any other relief as this Honorable Court shall deem just and appropriate.

**COUNT III -APPOINTMENT OF RECEIVER**

40. Plaintiff incorporates the allegations contained in Paragraphs 1 through 39 above by reference, with the same force and effect as if fully repeated.

41. Pursuant to the Loan Agreement, upon the default by Defendant under the Loan Documents, Huntington is entitled to, and Defendant consented to, the appointment of a receiver. *See* Section 6.2(b) of the Loan Agreement attached as **Exhibit A**, which provides Huntington all rights and remedies of a secured party under Michigan law.

42. Approximately 10 months ago, Defendant notified Huntington that it was seeking to sell its business assets and had secured a willing buyer.

43. After months of requesting financials and details about the proposed sale, Defendant finally provided Huntington a copy of the purchase agreement and an amendment. Financials were also provided in June 2026, but only after multiple requests.

44. On June 3, 2026, Defendant informed Huntington that the prospective purchase for Defendant's assets was no longer interested in purchasing Defendant's assets and the purchase agreement was terminated.

45. On July 17, 2026, a second purchaser entered into a purchase agreement, but a closing has not been scheduled and the agreement expires in mid-September 2026.

46. The Note is due in full and has been in default since September 2025. Interest and expenses continue to accrue without payment.

47. Defendant is in default under the Loan Documents, it has agreed to the appointment of a receiver under these exact circumstances, and it has no prospects of satisfying the Note in full, having failed to close on a sale of its business since attempting to do so for almost a year.

48. Based upon the foregoing facts and circumstances and pursuant to Fed. R. Civ. P. 66 and applicable Michigan law, the appointment of a receiver for the Personal Property Collateral and the proceeds and income derived therefrom is appropriate.

WHEREFORE, The Huntington National Bank prays that this Honorable Court enter an order:

A. Appointing a receiver for the Personal Property Collateral for the purposes of preventing waste, and the enforcement and performance of the provisions of the Security Agreement and other related Loan Documents;

B. Authorizing the receiver to take possession of the Personal Property Collateral and the income derived therefrom and the other assets of Defendant in connection with the Personal Property Collateral; to market and sell same, and to otherwise do all things necessary or appropriate to obtain maximum realization therefrom; to preserve and protect same, and to exercise such control and management of them, including but not limited to repair, maintenance, payment of taxes, insurance and indebtedness owing to Huntington, as the Court may direct, pursuant to the provisions of the applicable Loan Documents, statutes and law;

C. Requiring Defendant to turn over to the receiver all income from the Personal Property Collateral and other assets pertaining thereto, from and after the date of default, except to the extent such

income was used for the operation, management and maintenance thereof;

D. Enjoining Defendant and all persons and entities acting by, through or in concert with it, from interfering in any manner with the receiver's operation and management of the Personal Property Collateral and any other collateral securing repayment of the Indebtedness owing to Huntington; the collection of income generated by the operation of the Personal Property Collateral or by any other collateral securing repayment of the Indebtedness owing to Huntington; or, the receiver's performance of any other powers or duties conferred upon the receiver by this Court, all during the pendency of this action, and to grant the receiver such other authority as the Court may deem fair and equitable; and,

E. Granting Huntington such other relief as the Court deems appropriate.

Respectfully submitted,

PLUNKETT COONEY

Dated: September 8, 2026

By:__________________________________

Peter D. Cronk (P60172)
Matthew J. Boettcher (P40929)
Attorneys for Plaintiff
101 N. Washington Sq., Ste. 1200
Lansing, MI 48933
517.324.5611